240 F.Supp. 195 (1965)
George H. NIEKAMP, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 63C426(2).
United States District Court E. D. Missouri, E. D.
February 18, 1965.
*196 Donald E. Fahey, Don O. Russell and Wm. A. Ens, St. Louis, Mo., for plaintiff.
Richard D. FitzGibbon, Jr., U. S. Atty., John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for defendant.
MEREDITH, District Judge.
This matter was tried to the Court without a jury and the Court makes the following findings of fact and conclusions of law in this memorandum opinion.
This is an action for income tax refund for the years 1956, 1957, 1958 and 1959. Plaintiff's federal income tax returns for the years were timely filed and the taxes shown on the returns were paid. On each of said returns plaintiff claimed an exclusion from taxable income under § 105(d) of the Internal Revenue Code of 1954. For the year 1956 plaintiff claimed an exclusion in the amount of $4,100, for each of the years 1957, 1958 and 1959, plaintiff claimed exclusion in the amount of $5,200.
The claimed exclusions were disallowed and the tax deficiencies assessed accordingly. The deficiencies were paid and claims for refund timely filed and denied. This suit is timely filed and the parties and the venue are proper. The Court has jurisdiction under 28 U.S.C.A. § 1346(a) (1).
The taxpayer was employed by Beck and Corbitt Company, a steel warehouse center in St. Louis, Missouri, a corporation controlled by taxpayer's family. The taxpayer began working for the company in 1906, he became its secretary in 1911, was elected to the Board of Directors in 1912 and became its vice president in 1922. During the years in question he remained the vice president and a member of the Board of Directors. On March 18, 1956, plaintiff reached the age of 65 years.
Prior to 1954 taxpayer was receiving a base salary of approximately $7,200 per year and a regular annual bonus ranging from $5,000 to $15,000 per year. He was in charge of the automobile supplies division in connection with which he reviewed orders, contacted customers, attended business meetings and conventions. That division was closed by the company during the year 1954. Starting in 1954 taxpayer no longer received a bonus, but was still paid his base salary.
In July 1954 taxpayer suffered an attack of herpes zoster ophthalmicus. This disease is an inflammation of the nerves which consists of swelling and blisters around the eyes, forehead and in the scalp. The plaintiff's doctor testified that taxpayer was hospitalized from August 23, 1954, to September 2, 1954. He was hospitalized in Mayo Clinic in July 1956 for several days. He was hospitalized for two weeks in December 1956. He was hospitalized in July 1957, August 1959, December 1960, January 1962, and August 1962. He was treated by the doctor every week or ten days from September 1954 through 1959, and the doctor's records indicate that during the year 1956 he saw the taxpayer twenty times, during the year 1957 thirty-one times, during the year 1958 thirty-three times, during the year 1959 thirty-eight times. The *197 doctor testified that the taxpayer was unable to do any work in his opinion after the attack in 1954 through 1959, that in his opinion when he first saw the taxpayer he thought the disease could be cured in from eighteen to thirty-six months. He testified that when he was unable to effect a cure, taxpayer lost all interest and became very despondent. He further testified that this disease is accompanied by excruciating pain which was constant, but by the use of sedatives and drugs the patient eventually learns to live with the disease.
Taxpayer also consulted an eye specialist, who has since moved to California and did not testify either by deposition or before the Court.
Taxpayer testified that after his hospitalization in 1954, he returned to the office and had a desk which was used by the salesmen and he made it a practice of coming to the office once a week or every ten days, attended most directors' meetings, and did attend one convention for two days. Other executives of the company testified that the taxpayer had no duties assigned to him after his attack and that no reports were filed by him and that as far as they were concerned his visits to the office consisted of taking care of personal business matters.
The Court is of the opinion that the taxpayer did not perform any work for the company after he was stricken in 1954 through the year 1959. That the reason for his not working was his physical condition.
Beck and Corbitt had a company policy of retaining the service of elderly administrative and executive employees on the job as long as they were able to work. At the time of the trial, out of twenty-six executives and administrative personnel, eight of them were over the age of 65, including one who was 90 years of age, still employed. The records of the company indicated that from 1925 through the periods in question, it was the practice, custom and policy of the company to pay all administrative and executive personnel their full salary during periods of illness. Of the twenty-six executive and administrative personnel, other than the taxpayer, seventeen had been paid full salary for periods of illness ranging from one week to one year. This was never incorporated in any formal written plan, nor was it an enforceable obligation of the company, but it was known to all of the administrative and executive employees.
The government argues that taxpayer by attending the meetings of the Board of Directors and by returning to the office of the company performed services for the company and that the payments received by him are includable in gross income under § 61(a) (1) of the Internal Revenue Code of 1954. See Estate of Kaufman v. Commissioner, 35 T.C. 663, aff'd 300 F.2d 128 (C.A. 6th); Hall v. United States, 242 F.2d 412 (C.A. 7th). They further argue that since he was past the age of 65 years, that the payments made to him were not sick pay but were retirement pay. They contend under the reasoning of Lang v. Commissioner, 41 T.C. 352, that there is no plan because there are no rules or regulations set out by the company, and accordingly, under § 105(d) of the Internal Revenue Code of 1954 and the regulations thereunder, the company's custom and policy did not constitute a plan.
The Court disagrees with the contention of the government and finds that the company policy was clear, simple and not ambiguous. The company merely paid all employees who were ill full salary as long as they were ill. This qualifies as a plan under § 105(d) of the Internal Revenue Code of 1954. See Kuhn v. United States, 3 Cir., 258 F.2d 840; Andress v. United States, D.C., 198 F.Supp. 371; Jackson v. United States, 3 A.F.T.R.2d 517.
The Court finds that taxpayer performed no services for his employer during the periods in question and after he was stricken and that in view of the testimony of his physician and his fellow executives, whatever he may have done *198 was not useful work, but was done to occupy his mind.
The amounts claimed by the taxpayer qualify as a deduction under § 105(d).
The parties to this action will prepare and submit to the Court within 30 days from the date of this memorandum a judgment for the plaintiff for the proper amounts of refund for the years 1956, 1957, 1958 and 1959, with statutory interest.