ESTATE of E. W. CHISM, Deceased, Clara Chism, Executrix, and Clara Chism, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 18203.

United States Court of Appeals
Ninth Circuit.

July 30, 1963.

Rehearing Denied Oct. 22, 1963.

Kent & Brookes, Valentine Brookes, Paul E. Anderson, and Richard A. Wilson, San Francisco, Cal., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter and Ralph A. Muoio, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before ORR, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

This is a proceeding to review a decision of the Tax Court redetermining deficiencies in the income taxes of E. W. Chism and his wife, Clara Chism, for the years 1952 through 1956. Clara Chism

appears in her own right and as executrix of the estate of her deceased husband who died on December 27, 1956.

During the years in question the Chisms and their daughter, Alice Jane Frazer, owned all of the stock of Chism Ice Cream Company, a Nevada corporation. E. W. Chism, who was president of the company, owned 71,500 shares. Mrs. Chism, who was corporate secretary, owned 67,500 shares, and their daughter, who was vice-president, owned 51,000 shares. During these years Chism drew an annual salary of $24,000 and the daughter an annual salary of $5,000. Mrs. Chism received no salary.

Also during those years, and for several years before, Chism and his wife withdrew substantial additional amounts from the corporation. These withdrawals were recorded on the books of the company in an account entitled "E. W. Chism—Note Receivable."[1] They were never evidenced by promissory notes or other written instruments, no interest was ever paid or charged on the outstanding balance, and no collateral security was ever given for them. Mrs. Chism and the general manager of the company testified that these withdrawals were loans and were to be repaid. In years prior to 1952 some repayments were made, the last being made in 1951, in the amount of $1,720.17.

On occasion the company had made loans to other employees for the purpose of assisting them to meet personal emergencies, and in these instances, the company did not require the execution of a note or the posting of collateral, nor did it charge interest. Balance sheets evidencing the existence of the withdrawals by the Chisms as constituting a loan to stockholders was included with each of the corporate income tax returns filed by the company during the years in question and prior thereto. In addition, these balance sheets were used by the company in securing bank financing.

Treating these withdrawals in excess of salary as loans from the company, the Chisms did not report them as gross income in their joint income tax returns for the years 1952 through 1956.

On March 6, 1959, the Commissioner of Internal Revenue issued to the Chisms his deficiency notice covering those years. The Commissioner determined that all such withdrawals from the company in excess of salary constituted a distribution of informal dividends to Chism and his wife. Based on this determination the Commissioner fixed the aggregate income tax deficiency for the years 1952 through 1956 at $15,683.00, distributed between the years as shown in the margin.[2]

A timely petition to redetermine the deficiency for these years was filed with the Tax Court. It was alleged in the petition that the Commissioner had erred in three respects: (1) in treating the Chisms' withdrawals in excess of salary as dividends instead of loans; (2) in failing to treat the withdrawals, alternatively, as tax-exempt health insurance plan payments; and (3) in assessing a deficiency for the taxable year 1952 for the additional reason that assessment for that year is barred by the statute of limitations. In addition, petitioners asked for a refund of all taxes paid for the years in question on the ground that all of Chism's salary on which taxes had been paid was paid pursuant to a health insurance plan.

In its unreported findings of fact and opinion the Tax Court rejected all of petitioners' contentions, upheld the deficiency determination, and disallowed the

1. The withdrawals by the Chisms in excess of salary for the years here in question were as follows:

| Year | Amount |
|------|--------|
| 1952 | $10,046.90 |
| 1953 | 7,821.16 |
| 1954 | 10,213.88 |
| 1955 | 12,565.81 |
| 1956 | 7,300.00 |

2.

| Year | | Deficiency |
|------|------|------------|
| 1952 | Income Tax | $4,557.10 |
| 1953 | Income Tax | 3,388.92 |
| 1954 | Income Tax | 3,000.50 |
| 1955 | Income Tax | 3,233.48 |
| 1956 | Income Tax | 1,503.00 |

claim for overpayment of taxes. On this review petitioners renew the contentions which they advanced without success in the Tax Court. With regard to the claim for refunds, recovery of the taxes paid for the years 1952 and 1953 only is sought.

Petitioners advance several reasons why the Tax Court erred in finding and concluding that the withdrawals made by the Chisms from the company in the years 1952 through 1956 were taxable dividends rather than loans. The first of these is that a Nevada probate court had previously adjudicated that the withdrawals gave rise to an enforceable claim by the corporation which it was entitled to collect from the estate of E. W. Chism, and that the Tax Court is bound by that adjudication.

Since the Tax Court made its own evaluation of the circumstances attending the withdrawals, it obviously did not consider itself conclusively bound by the state court adjudication. Its reasons for not considering itself bound are not so clear. However, from the Tax Court's opinion, it appears that it relied upon the nonadversary character of the probate proceeding; and, possibly, that it considered the proceeding collusive.

Consequently, the thrust of the arguments presented here is directed toward the nature of the Nevada probate proceeding. Petitioners and the Commissioner agree that if the adjudication was collusively obtained, solely for the purpose of affecting petitioners' federal income tax liability, then it is not binding here. They also agree that the state court proceeding was not contested in the sense that one party said "yes" while another said "no." Their disagreement centers around whether the adjudication was in fact collusively obtained, and whether an adversary contest in the state court proceeding is essential to the state adjudication's conclusiveness for federal tax purposes.

Both petitioners and the Commissioner seem to agree in the assumption that a state court adjudication could, under certain factual circumstances, be fully deter-minative of whether, for federal tax purposes, the withdrawals were loans or dividends. If that assumption is an unwarranted one, then we need not decide whether the state adjudication was collusively obtained, or whether in order to be binding here it must have involved a contest. That is to say, if the Government is not concluded on principles of res judicata and if Congress has not made the answer to the "loans or dividends?" question wholly dependent upon state law, then we need not and should not attempt to answer those questions. Our efforts to do so would only beget confusion. Gallagher v. Smith, 3 Cir., 223 F.2d 218, 222; I Paul, Federal Estate & Gift Taxation § 1.11 at pages 75–77.

The Nevada probate proceeding in issue concerned only the E. W. Chism estate and Chism Ice Cream Company. Neither the Government nor any of its agencies was a party to it. No determination of law or fact made therein can be res judicata against the United States.

Accordingly, the Government is concluded by the state adjudication only if the tax imposed by the Internal Revenue Code is solely upon income as determined by state law, "the federal law having imposed no qualification upon or criterion for the taxability thereof." Gallagher v. Smith, 3 Cir., 223 F.2d at 222. Or to apply the principle of Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199, the state adjudication can be conclusive only if the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law.

The taxing statute with which we are here concerned provides only that gross income includes dividends. Section 22 (a), Internal Revenue Code of 1939; section 61(a) (7), Internal Revenue Code of 1954. It contains no express language making its operation dependent upon state law.

Nor does state law, by necessary implication, control as to whether withdrawals by shareholders from closely held corporations are loans or dividends. Whether a withdrawal is a loan is a

factual question "to be determined upon consideration of all the circumstances present in a particular case, and depends upon the existence of an intent at the time the withdrawal is made that it should be paid back." Clark v. C. I. R., 9 Cir., 266 F.2d 698, 710–711. The significant fact is the intent of Chism when he took the money, whether he took it for permanent use in lieu of dividends or whether he was then only borrowing. Wiese v. C. I. R., 8 Cir., 93 F.2d 921, 923.

The Nevada probate court adjudication established that the Chisms had a legal obligation to repay the withdrawals that had been made. But it is not the existence of a legal obligation to repay that is controlling. It is petitioners' intent to honor, and the intent of their collective alter ego, the corporation, to enforce that obligation which determines the nature of the withdrawals. Cf. W. F. Young, Inc. v. C. I. R., 1 Cir., 120 F.2d 159, 164. The Tax Court did not err in refusing to be bound by the state court adjudication. Notwithstanding that it may have been taken for improper reasons, its action in reappraising the evidence in the light of a standard peculiar to federal tax law was entirely proper.

Petitioners also urge that the Tax Court erred in determining that the withdrawals were dividends because that determination is inconsistent with a determination made in a related case.

One of the findings of fact that the Tax Court made in concluding that the withdrawals were dividends rather than loans was that despite a considerable increase in its earned surplus between 1937 and 1956, Chism Ice Cream Company had never, with one small exception, declared or paid formal dividends.[3] This finding, say petitioners, is the only "fact of any substance" in support of the Tax Court's decision, and it is in direct conflict with the court's decision in a related case.

In the related case, Chism Ice Cream Company v. Commissioner, T.C. Docket No. 80200, which was consolidated with the case before us for trial, and from which no petition for review has been taken, the Tax Court held that a part of the annual salary which the company paid to Chism during the years 1953 through 1956 "represented excessive compensation which constituted informal dividends to Chism and his wife as stockholders."

How, ask the petitioners, could the Tax Court find that the company had never paid any "formal" dividends when in the related case it has held that the same company paid "informal" dividends during each of the years 1953 through 1956? The answer, of course, lies in the way that the Tax Court has qualified its use of the term "dividends" in each case. A finding that dividends have not been declared and paid as such is not inconsistent with a determination that corporate earnings have nevertheless been permanently withdrawn by the shareholders, whether in the form of salary, or of loans. And the fact that some such withdrawals have been in the form of salary would not preclude others from having been made in the form of loans.

Petitioners contend that there is no substantial evidence in support of the Tax Court's finding that the withdrawals were dividends. In support of this contention, they discuss the various pieces of evidence, both disputed and undisputed, and ask us to draw different inferences therefrom than did the Tax Court.

Whether the withdrawals were loans or dividends depends upon petitioners' intent at the time that they were made. And intent, to repay or to retain, is a question of fact, to be determined upon a consideration of all the circumstances in each case. Clark v. C. I. R., 9 Cir., 266 F.2d 698. Tax Court determinations of fact, including factual inferences from undisputed basic facts, may be set aside on appeal only if they are clearly erroneous. Commissioner v.

3. The company's earned surplus increased from $18,186.85 at the end of 1937 to $293,554.19 at the end of 1956.

Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

■ Some of the evidence is undisputed and would support either of two inconsistent inferences. There is some evidence in the record which militates against the Tax Court's finding, but not so strongly as to leave us with a definite and firm conviction that a mistake has been made. As is often the case, the deciding factors here are those which lie within the fact finder's area of special competence, credibility and demeanor of the witnesses. After reviewing the entire record, we conclude that the Tax Court's finding is not clearly erroneous.

After the beginning of 1952, E. W. Chism was physically incapacitated and was confined almost entirely to his home as a result of a heart ailment which began in 1948, and which recurred in more serious form during 1951. He continued to act as president of Chism Ice Cream Company during the years that followed, at first making occasional visits of one-half hour or so to the company's office, accompanied by a nurse, and later restricting his activity to participation in conferences held at home with the company's general manager. Throughout this period, and continuing to his death, the company continued to pay Chism his annual salary of $24,000.00.

In their returns for each of the years 1954 through 1956, the Chisms excluded $5,200 of Chism's salary from their gross income, relying upon section 105(d) of the Internal Revenue Code of 1954 which permits the exclusion of up to $100 per week of sick pay. These exclusions have

never been challenged by the Commissioner. No exclusions were made on petitioners' 1952 and 1953 returns, and in the Tax Court petitioners claimed a refund of all taxes paid for those years, taking the position that Chism's salary during those years constituted payments made pursuant to a wage continuation or health insurance plan.[4]

The Tax Court rejected the refund claims, finding that no wage continuation plan existed during any of the years 1952 through 1956.[5] Petitioners contend that this finding is against the clear weight of the evidence.[6]

■ After a review of the evidence, we cannot say that the Tax Court's finding is clearly erroneous. That the Commissioner failed to challenge the exclusions made in other years is not persuasive evidence one way or the other. His failure to do so may be the result of an oversight, or of a conscious though mistaken determination that a wage continuation plan was in existence. If the latter was the case, it would not preclude the Commissioner from reaching a different conclusion for the years under consideration. Caldwell v. C. I. R., 2 Cir., 202 F.2d 112, 115.

Chism Ice Cream Company had made payments to other employees during periods of unemployment due to illness or injury. However, from the facts that no plan had ever been reduced to writing, that the employees were never formally notified of the existence of such a plan, and that such rights as the employees might have had were subject to change without their consent, the Tax Court

4. Section 22(b) (5), Internal Revenue Code of 1939, provides for the exclusion from gross income of certain benefits received through accident or health insurance.

5. The Tax Court was required to make findings for all of the years 1952 through 1956, even though only the years 1952 and 1953 are in issue here. In the ice cream company case, consolidated for trial with this case, the company took the position that if any of the salary paid

to Chism during the years 1953 through 1956 exceeded the reasonable value of his services, it should nevertheless be deductible as payments made pursuant to a wage continuation plan.

6. Petitioners' claim for refund of 1952 taxes was filed on March 11, 1958. For the reasons stated in a later part of this opinion, the claim was not timely filed. The claim for refund of 1953 taxes was timely filed.

could well determine that no wage continuation plan existed.

Finally, petitioners contend that the deficiency for 1952 cannot be assessed because the statutory notice of deficiency was not given within the period prescribed in section 275(c), Internal Revenue Code of 1939.[7] Petitioners consented, in writing, to an extension of the period during which a deficiency could be assessed, and the statutory notice of deficiency was given at a time covered by the extension agreement. However, it is contended that since the extension agreement did not operate to extend the time during which a claim for refund could be filed, it is void for lack of mutuality.

Petitioners filed their 1952 income tax return on March 14, 1953. Its due date was March 15, 1953, so that on March 15, 1956 the general three-year statute had run.[8] Petitioners' consent to extend the period for assessment until June 30, 1959, was accepted by the Commissioner on November 13, 1957 before the five-year statute ran on March 15, 1958. The Commissioner's statutory notice of deficiency was given on March 6, 1959.

Since petitioners' consent to extend the assessment period was not given within three years after their 1952 return was due, the consent did not operate to extend the time within which they could file a claim for refund of taxes paid for 1952. The period during which a refund claim may be filed could be extended only by an agreement made within three years after the return had been filed. Section 322 (b) (1) and (3), Internal Revenue Code of 1939.

Lack of mutuality vitiates the extension agreement, say petitioners; not because a consideration is normally required to effectively waive a statute of limitations; but because Congress, in enacting section 322(b) of the Internal Revenue Code of 1939, intended that every agreement extending the period of limitations should be mutual in the sense that it would lift the bar of the statute both for the purpose of refunds and for deficiencies. Reference is made to the legislative history of section 322(b) (3) to support this contention.[9]

We need not look to the legislative history for a resolution of this issue. The statutes speak clearly for themselves.

7. Internal Revenue Code of 1939:
"§ 275. Period of limitation upon assessment and collection
"(c) Omission from gross income. If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed."
The five-year statute is applicable here because the deficiency for 1952 exceeds twenty-five per cent of petitioners' gross income as reported in their return.
While section 275(c) provides that the deficiency must be assessed within the five-year period, section 277 provides that giving the statutory notice suspends the running of the statute of limitations.

8. Internal Revenue Code of 1939:
"§ 275. Period of limitation upon assessment and collection
"(a) General rule. The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."
Section 275(f) provides that if the return is filed before the last day prescribed by law, it shall be considered filed on the last day permitted by law for the purpose of determining when the period begins to run.

9. E. g., H.Rep. 2333, 77th Cong., 2d Sess., at page 52:
" * * * It seems only proper that if the Government is given the right by waiver to make assessments for the taxable year after the period for assessment has expired, the taxpayer should also have the right to additional time for filing refund claims for the same year."

Section 322(b) (3) provides that claims for refunds may be filed during the period as extended pursuant to section 276 (b) if the extension agreement is executed "within the period prescribed in paragraph (1) for the filing of a claim for credit or refund, * * *." The "period prescribed in paragraph (1)" is "three years from the time the return was filed by the taxpayer * * *." But while the agreement must be made within three years after the return was filed if the time for filing a refund claim is to be extended, section 276(b) provides that the time for assessing deficiencies may be extended if the agreement is executed "before the expiration of the time prescribed in section 275 for the assessment of the tax * * *." Section 275, in turn, contains both the three-and the five-year periods of limitation, each of which is to be applied under different circumstances.

Thus, in situations in which the five-year statute is applicable, agreements to extend the assessment period can be made at any time before the five-year statute has run. Azevedo v. C. I. R., 9 Cir., 246 F.2d 196, 200. But refunds are authorized only if the claim has been filed within the three years after the return was filed, or within a period as extended by an agreement made within that three-year period. A congressional intent to require mutuality in every case would be incompatible with this statutory framework. It would effectively preclude any agreement extending the five-year period for assessing deficiencies from being made more than three years after the return had been filed.

We will not impute such an intent to Congress in the face of its contrary statutory language. The agreement extending the assessment period in this case was an effective one and assessment of the deficiency for 1952 is not barred.

The judgment of the Tax Court is in all respects affirmed.