JOHN C. AND MARY LANG, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1708–62. Filed December 9, 1963.

*Vincent J. Musachia,* for the petitioners.
*L. Lyle Walker* and *John D. Laflin,* for the respondent.

## OPINION

Petitioners contend that $1,600 [1] of the payments received by petitioner from Aaron during the latter part of 1960 represents sick pay, excludable from gross income under the provisions of section 105(d). [2]

Section 105(a) provides in general that amounts received by an employee "through accident or health insurance" for personal injury or sickness shall be included in the gross income of the employee to the extent that the amounts are attributable to contributions of the employer or are paid by the employer. But section 105(d) provides that the employee's gross income does not include the payments, up to $100 per week, referred to in section 105(a) if the amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injury or sickness. Further, section 105(e) provides that for purposes of sections 104 and 105 amounts received under an accident or health plan for employees "shall be treated as amounts received through accident or health insurance."

Therefore, while section 105(d) refers only to "wages or payments in lieu of wages," the exclusion provided by that subsection extends only to amounts referred to in section 105(a)—that is, amounts received through accident or health insurance. By virtue of section 105(e) the phrase "amounts received through accident or health in-

---

[1] It is not specifically shown in the record how petitioners arrived at this amount but presumably it represents $100 per week for the last 16 weeks of the year 1960.

[2] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

SEC. 105(d). WAGE CONTINUATION PLANS.—Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. In the case of a period during which the employee is absent from work on account of sickness, the preceding sentence shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of sickness for at least one day during such period. If such amounts are not paid on the basis of a weekly pay period, the Secretary or his delegate shall by regulations prescribe the method of determining the weekly rate at which such amounts are paid.

surance" is expressly stated to encompass amounts received under an accident or health *plan* for employees.[3]

It follows that in order to be excluded from gross income under the above provisions, payments constituting wages or payments in lieu of wages must be received by an employee through accident or health insurance, or under an accident or health *plan* for employees.

The rule was stated in *Estate of Leo P. Kaufman*, 35 T.C. 663 (1961), aff'd. 300 F. 2d 128 (C.A. 6, 1962), to be:

> For wage continuation payments to an employee to qualify for the sick pay exclusion provided by section 105(d), such payments must be received by the employee: (1) Through accident or health insurance or under an accident or health plan for employees, (2) for a period during which the employee is absent from work on account of personal injuries or sickness.

Petitioners do not contend that the payments were received through accident or health insurance as such, so it is clear that petitioners, to prevail, must show that the payments were received by petitioner from his employer under an accident or health plan for employees.

Respondent contends that Aaron had no accident or health plan for its employees and that no payments received by petitioner from Aaron during the period he was absent from work can be considered as received under a plan that would qualify under section 105 (d) and (e). We must agree with respondent.

Section 1.105–5, Income Tax Regs.,[4] recognizes that a plan need not grant enforceable rights to an employee, that it may offer different treatment to different classes of employees, and that it may take the form of a "program, policy, or custom having the effect of a plan." But it is provided that if the employee's rights are not enforceable, he must be covered by a plan, and notice or knowledge of the plan must have been reasonably available to him. As we interpret the regula-

---

[3] Also see *Haynes* v. *United States*, 353 U.S. 81 (1957), interpreting this phrase in section 22(b)(5) of the 1939 Code.

[4] Sec. 1.105–5. Accident and health plans.

Sections 104(a)(3) and 105 (b), (c), and (d) exclude from gross income certain amounts received through accident or health insurance. Section 105(e) provides that for the purposes of sections 104 and 105 amounts received through an accident or health plan for employees, and amounts received from a sickness and disability fund for employees maintained under the law of a State, a Territory, or the District of Columbia, shall be treated as amounts received through accident or health insurance. In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness. A plan may cover one or more employees, and there may be different plans for different employees or classes of employees. An accident or health plan may be either insured or noninsured, and it is not necessary that the plan be in writing or that the employee's rights to benefits under the plan be enforceable. However, if the employee's rights are not enforceable, an amount will be deemed to be received under a plan only if, on the date the employee became sick or injured, the employee was covered by a plan (or a program, policy, or custom having the effect of a plan) providing for the payment of amounts to the employee in the event of personal injuries or sickness, and notice or knowledge of such plan was reasonably available to the employee. It is immaterial who makes payment of the benefits provided by the plan. For example, payment may be made by the employer, a welfare fund, a State sickness or disability benefits fund, an association of employers or employees, or by an insurance company.

356

tion, in order for there to be a plan, the employer must commit himself to certain rules and regulations governing payment; these rules must be made known to his employees as a definite policy; it is not enough that he merely lets it be known that payments may be made to deserving employees if they are absent from work for illness. The employer's rules, adopted or crystallized by policy or custom, may offer varying treatment for employees, but the rules must be determinable before the employee's sickness arises.

The record herein presents somewhat the same problem that was considered by this Court in *Estate of Leo P. Kaufman, supra* at 666, in which it was said:

There is considerable doubt whether an accident or health *plan* existed within the meaning of section 105. We are not unmindful of the liberalizing intent indicated by the legislative history of that section. See, generally, Comment, "Taxation of Employee Plans," 64 Yale L.J. 222 (1954). Likewise, a liberal construction is evidenced by the Treasury regulations promulgated under section 105 which speak in terms of an "arrangement" and "program, policy, or custom having the effect of a plan." Sec. 1.105–5.[2] [Footnote omitted.] However, the recurrent statutory use of the term "plan" or "plans," as well as the comment in the Senate Finance Committee's report (S. Rept. No. 1622, 83d Cong., 2d Sess., p. 185 (1954)), that section 105, as adopted, "specifies that the exemption is to be granted only to benefits paid out under an arrangement which constitutes a plan," indicates that the use of "plan" signifies something more than merely one or more *ad hoc* benefit payments. Had Congress intended to exclude from gross income all *ad hoc* benefit payments arbitrarily made at the complete discretion of the employer in the absence of any sort of prior arrangement or practice, the use of the term "plan" would scarcely have been necessary.[5]

A plan presupposes a predetermined course of action under prescribed circumstances, and a plan, for purposes of section 105(d), must do more than anticipate the favorable exercise of discretion by

[5] In the light of the legislative history of sec. 105, we think the provisions of the regulations give a quite liberal interpretation of the statute. Sec. 105, as it originally appeared in the House version of H.R. 8300, which became the Internal Revenue Code of 1954, granted exclusion only to amounts received under a *qualified* employer's health or accident plan, defined as a plan which, if a pension plan, would meet certain of the requirements of sec. 501(e), and under which the employee's rights were nonforfeitable. See H. Rept. No. 1337, 83d Cong., 2d Sess., p. 15 (1954). The Senate amended sec. 105, substituting a new section therefor, which eliminated the requirement that the payments be received under a *qualified* health or accident plan. The report of the Senate Finance Committee, S. Rept. No. 1622, 83d Cong., 2d Sess., p. 15 (1954), stated that the committee approved in principle the general objectives of the provisions in the House bill, but explained that because of its elimination of certain automatic qualification provisions in the sections relating to pension plans, it was felt necessary to eliminate in sec. 105 the requirement of a *qualified* health or accident plan to avoid the necessity for obtaining private rulings on health and accident plans as would be the situation with pension plans.

This, together with the fact that sec. 105(a) retained the language "accident or health insurance" as contained in sec. 22(b)(5) of the 1939 Code, indicates, we think, that Congress intended a rather definite employer's health or accident plan to qualify under section 105(d). We recognize the decision of the Supreme Court in *Haynes* v. *United States, supra*, giving a liberal interpretation to sec. 22(b)(5) of the 1939 Code, may have influenced the liberal interpretation of sec. 105 of the 1954 Code as contained in the regulations, but we do not interpret that case to eliminate the necessity of a definitive plan.

the employer when sickness arises; it must be identified by more than an occasional *ad hoc* benefit payment. *Estate of Leo P. Kaufman*, *supra*.

In the present case, petitioner was paid his regular salary for the period he was absent from work after his heart attack in 1960, and the sales manager testified that the decision to pay petitioner was made by him in New York in conference with other executive officers of the company, who considered petitioner's length of service and his value to the company. The sales manager testified further that Aaron had a general practice of continuing the salaries of employees who were absent from work for bona fide reasons, but that "We do not have any notified illness policy. We do have what I would term a general practice of paying our employees during their absence for any good reason, whether it be sickness or they have to leave for any occasion that warrants the consideration."

But when petitioner's assistant was absent from work in December 1960, it appears that there was some question as to whether his salary would be continued during his illness, and that the management in New York had decided not to continue his salary until petitioner finally prevailed upon them to do so. In the testimony concerning this incident, there is no indication whatever that any determinant other than the discretion of management to pay or not to pay the continued salary entered into the decision. It is implicit in the testimony of all the witnesses who testified that the management of Aaron would make any decisions concerning salary continuations when the problem arose, and that there were no definite rules for determining in advance of a particular employee's absence from work whether none, some, or many payments would be made to him. There is nothing in the record to indicate that an employee could really count on his salary being continued if he became ill and unable to work for any length of time, or if his salary was paid during the first part of his illness that he could anticipate how long the payments would continue. Nor is there any evidence that petitioner's employment contract contained any provision for continuation of his salary during illness. Compare *Kuhn* v. *United States*, 258 F. 2d 840 (C.A. 3, 1958). The "general practice" of Aaron offered no definite expectation to petitioner or to any other employee that he would receive continued salary if he became sick. Cf. *Andress* v. *United States*, 198 F. Supp. 371 (N.D. Ohio 1961).

The evidence as to the "general practice" of Aaron is similar to that of the "policy" of the employer in the *Kaufman* case; it is not indicative of a plan which is the prerequisite for application of the exclusion provisions of section 105(d). See *Chism's Estate* v. *Commissioner*, 322 F. 2d 956 (C.A. 6, 1963), affirming a Memorandum Opinon of this Court.

Because we are unable to conclude that petitioner received any payments in 1960 through an accident or health plan, we sustain respondent's determination, and it is unnecessary for us to consider the alternative argument advanced by respondent that petitioner's wage continuation payments were less than the $1,600 claimed by petitioners.

*Decision will be entered for the respondent.*