ALAN B. LARKIN AND CHARNA LARKIN, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 772-66, 783-66, 808-66.   Filed July 31, 1967.

*Jack H. Calechman*, for the petitioners.
*Lawrence A. Wright*, for the respondent.

TANNENWALD, *Judge:* Respondent determined deficiencies in the income tax of the following petitioners for the years and amounts noted:

[1] Cases of the following petitioners are consolidated herewith: Harold S. Larkin and Lenore G. Larkin, docket No. 783-66; Register Publications, Inc., docket No. 808-66.

| Petitioners | Docket No. | Taxable year | Deficiency |
|---|---|---|---|
| Alan B. Larkin and Charna Larkin | 772-66 | 1961 | $537.88 |
| | | 1962 | 448.33 |
| | | 1963 | 424.32 |
| Harold S. Larkin and Lenore G. Larkin | 783-66 | 1961 | 461.64 |
| | | 1962 | 525.38 |
| | | 1963 | 289.78 |
| Register Publications, Inc. | 808-66 | Nov. 30, 1961 | 1,257.15 |
| | | Nov. 30, 1962 | 589.59 |
| | | Nov. 30, 1963 | 711.82 |

The issues involved are: (1) Whether medical reimbursement payments by petitioner Register Publications, Inc., for the benefit of petitioners Alan B. Larkin and Harold S. Larkin were properly excluded from their gross income under section 105(b) ;[2] and (2) whether petitioner Register Publications, Inc., is entitled to a deduction on its corporate income tax return for medical expenses paid for the benefit of stockholder employees, as ordinary and necessary expenses under section 162(a).

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

Petitioners Harold S. and Lenore G. Larkin are husband and wife, having their legal residence in Brookline, Mass., at the time of the filing of the petition in docket No. 783–66. Petitioners Alan B. and Charna Larkin are husband and wife having their legal residence in Brighton, Mass., at the time of the filing of the petition in docket No. 772–66. Both filed their joint Federal income tax returns for the calendar years 1961, 1962, and 1963 with the district director of internal revenue, Boston, Mass.

Petitioner Register Publications, Inc. (hereinafter called the corporation), is a corporation having its principal place of business in Boston, Mass., at the time of the filing of the petition in docket No. 808–66. During the taxable years ended November 30, 1961, 1962, and 1963, its corporate income tax returns were filed with the district director in Boston, Mass.

At all times material herein, the corporation engaged in the business of publishing, together with a certain amount of printing and traditional advertising; all of the issued and outstanding stock was held in equal shares by Harold S. and Alan B. Larkin; the board of directors consisted of Harold S. and Alan B. Larkin and their parents, Bessie and Joseph W. Larkin, each of whom was also employed by the corporation; Harold was president of the corporation, Alan, treasurer, Joseph, vice president, and Bessie served as clerk.

During the taxable years in question, approximately one-third of the corporation's employees were full-time employees, approximately

---

[2] Unless otherwise stated, all future references are to the Internal Revenue Code of 1954.

another third were short term, or seasonal, employees, and the remainder were part-time, working only 4 to 6 hours per week.

The affairs of the corporation were carried on in a very informal manner. Board meetings were held on an irregular basis, usually at the home of one of the directors. Bessie acted as the secretary at such meetings. Although minutes were kept, they did not always reflect everything that occurred or was said at the meetings.

Minutes of the annual meetings of the directors and stockholders of the corporation from December 10, 1956, through December 9, 1963, each contained the following identical resolution:

Upon motion duly made and seconded it was VOTED to continue the accident and health plan for such employees that the officers at their discretion consider should be covered.

Other than the foregoing resolutions, there was no written evidence of any corporate program of medical benefits. The availability of benefits was not communicated to employees until decision was taken to include them. Such decision was made in advance of the actual time that any included employee incurred medical expense.

Commencing in the taxable year ended November 30, 1957, the corporation paid medical expenses for the benefit of the two stockholder-officers of the corporation, Harold S. and Alan B. Larkin, and payments were also made for the benefit of Joseph W. Larkin, in the following total amounts:

| TYE Nov. 30— | Corporation payments |
|---|---|
| 1957 | $280. 08 |
| 1958 | 490. 84 |
| 1959 | 1, 174. 03 |
| 1960 | 1, 419. 21 |

During the fiscal years ended November 30, 1961, 1962, and 1963, the corporation continued to make similar payments of medical expenses for the benefit of Harold S. and Alan B. Larkin and their dependents and for the benefit of Joseph W. Larkin. In addition, payments were made in the latter 2 years for the benefit of Oscar Pluznick, who was advertising director of the company and had been with it since its inception. These payments, which the corporation claimed as a deduction on its Federal income tax returns, were as follows:

| | 1961 | 1962 | 1963 |
|---|---|---|---|
| Harold S. Larkin and dependents | $1,037.80 | $969.33 | $820.57 |
| Alan B. Larkin and dependents | 1,208.03 | 863.89 | 1,123.85 |
| Joseph W. Larkin | 171.75 | 185.10 | 158.40 |
| Oscar Pluznick | 0 | 138.46 | 173.00 |
| Total | 2,417.58 | 2,156.78 | 2,275.82 |

Other than Harold S., Alan B., and Joseph W. Larkin and Oscar Pluznick, no employees were ever included in any medical benefits program of the corporation nor were any medical expenses paid by the corporation on behalf of any such employees.

Medical reimbursement payments for the benefit of Harold S. and Alan B. Larkin during the taxable years in issue were excluded by them from gross income.

During the taxable years ended November 30, 1961, 1962, and 1963, the corporation reported taxable income of $28,521.34, $20,378.27, and $623, respectively. During these years, Harold S. and Alan B. Larkin were each paid identical salaries by the corporation of $16,300, $7,300, and $23,700, respectively. In the first 2 taxable years, the corporation paid $1,196 in salary to Joseph W. Larkin and the same amount to his wife, Bessie. In the third taxable year, Joseph was paid $2,705.31 as salary, while Bessie was paid $1,232.06.

OPINION

The critical question with which we are faced herein is whether the payments of medical expenses for the benefit of certain employees of the corporation are excludable from their gross income under section 105 [3] and deductible by the corporation as ordinary and necessary business expenses under section 162(a).

At the time of the enactment of the Internal Revenue Code of 1954, Congress made sweeping changes in the statutory provisions dealing with health, accident, and related benefits. See Comment, "Taxation of Employee Accident and Health Plans Before and Under the 1954 Code," 64 Yale L.J. 222 (1954). In so doing, it dealt in section 105 with "Amounts Received Under Accident and Health Plans." Subsection (a) sets forth the general rule of includability of such amounts in gross income as follows:

(a) AMOUNTS ATTRIBUTABLE TO EMPLOYER CONTRIBUTIONS.—Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

Subsection (b) carves out an exception with respect to reimbursed medical expenses by providing—

(b) AMOUNTS EXPENDED FOR MEDICAL CARE.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income

---

[3] In point of fact, part of the expenditures of the corporation represented Blue Cross premiums. The question of taxability of these payments to the employees would appear to fall under sec. 106. The parties have not, however, made any distinction with respect to these payments. In any event, the same criteria which concern us herein would seem equally applicable under that section.

does not include amounts referred to in subsection (a) if such amounts are paid, directly or indirectly, to the taxpayer to reimburse the taxpayer for expenses incurred by him for the medical care (as defined in section 213(e)) of the taxpayer, his spouse, and his dependents (as defined in section 152).

Subsection (e) specifically provides—

(e) ACCIDENT AND HEALTH PLANS.—For purposes of this section and section 104—

(1) amounts received under an accident or health plan for employees * * *

\* \* \* \* \* \* \*

shall be treated as amounts received through accident or health insurance.

The parties have concentrated on two propositions in applying the foregoing provisions of section 105. First, both agree, and correctly (cf. *John C. Lang*, 41 T.C. 352 (1963)), that a "plan" is a fundamental prerequisite—but disagree whether, on the facts herein, one actually was in existence. Second, if there was a "plan," respondent argues that it was discriminatory and therefore not within the purview of section 105. Petitioner counters with the assertion that the presence or absence of discrimination is immaterial. Neither party appears to have considered an intermediate issue, namely, even if a plan existed, was it "a plan *for employees*"? (Emphasis added.)

We consider the intermediate issue first because its disposition can be determinative. Assuming without deciding that a "plan" existed under the tenuous circumstances revealed by the record herein, that in and of itself is not sufficient. It is also essential that it be a "plan *for employees*."

The frequent use of the word "employee" in section 105 itself, and in the Committee reports, clearly reveals that the purpose of Congress in enacting the section was to benefit employees as distinguished from other classes of persons. See H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 15, A32–A34 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 15–16, 183–186 (1954); H. Rept. No. 2543, 83d Cong., 2d Sess., pp. 24–26 (1954). Thus, we direct our attention to the purpose for which the assumed "plan" herein was established. The several identical corporate resolutions refer to "the accident and health plan for such *employees* that the officers at their discretion consider should be covered." (Emphasis added.) But surely we are not bound by the label attached by the taxpayers themselves. We "are fully justified in examining such contracts or relationships to determine whether they are truthfully described by the labels which the parties have attached to them." See *Graybar Electric Co.*, 29 T.C. 818, 832, affirmed per curiam 267 F. 2d 403 (C.A. 2, 1959).

There is no indication whatsoever in the record that the payment of medical benefits was in any way related to the performance of services by employees of the corporation. Indeed, the indications are directly

to the contrary. Thus, Joseph W. Larkin, the father of the two stockholders, was apparently entitled to the same benefits as his two sons, although, according to the corporation's tax returns, his salary was substantially less than that of the other recipients of benefits. Concededly, mere discrepancy in the compensation of employees is not alone fatal, but it is a factor which should be taken into account, particularly where a stockholder or relative of a stockholder is involved.

There is no evidence that Pluznick, the only nonstockholder employee who received benefits other than the stockholders or their relatives, was included until fiscal year 1962, although he had been employed in the business for several years at the time the assumed "plan" was first put into effect some 6 years earlier. This casts doubt upon the testimony of Alan B. Larkin, the president and a 50-percent stockholder and the sole witness in this proceeding, that the narrow class of persons benefited stemmed from the fact that it was not until June 1960 that the "big growth" of the corporation occurred.[4]

We agree with petitioner that the fact that the medical expenses actually paid for the benefit of Pluznick were small is of marginal, if any, significance. The provisions of section 105 are not directly dependent upon benefits actually paid but relate rather to a prior existing plan to pay. Actual payment, of course, depends upon the chance factor of the occurrence of accident or sickness. We do think it significant in our search for purpose, however, that, whereas Blue Cross payments were made throughout the period in question for the benefit of the stockholders and their relatives, no such payments were made for the benefit of Pluznick. This element, coupled with the failure of the corporate resolutions to describe the limits of the benefits and Alan B. Larkin's admission that this problem had never been faced, also tends to negate the purpose to benefit employees.

Moreover, another indication of purpose stems from the fact that although the corporate resolutions did not cover dependents of employees, expenses were paid for the benefit of the dependents of the two shareholders. Yet, there is nothing in the record to indicate that Pluznick did not have dependents or that, if he did, they did not suffer accident or illness during the period in question.

Finally, we cannot ignore the fact that Alan B. Larkin conceded that it was the underlying purpose of paying benefits to discriminate in favor of stockholders and their relatives. We need not decide, as the parties would have us do, whether the existence of discrimination per se—e.g., in a situation where the only employees covered by a "plan" are also stockholders—would, in and of itself, be sufficient to

---

[4] Larkin testified that, during the fiscal years 1961 to 1963, the number of employees of the corporation fluctuated between 35 and 45. This assertion, as well as the assertion of "big growth," is open to question in light of the fact that the corporation's tax returns stated that the number of employees was not only less in number but declined during those years—24 in fiscal 1961, 20 in fiscal 1962, and 12 in fiscal 1963.

disqualify the receipt of medical benefits from the exclusionary provisions of section 105(b).[5] Irrespective of how that issue is ultimately resolved, we think that the existence of such discrimination should be taken into account in determining whether a medical benefits plan is a "plan *for employees.*"

The touchstone of section 105(b) is that the genesis of a medical benefits plan must be a purpose to benefit "employees" as against other persons or classes of persons. Cf. *Edward P. Clay,* 46 T.C. 505 (1966). Our approach in no way conflicts with the "liberalizing intent indicated by the legislative history" of section 105. See *John C. Lang, supra; Estate of Leo P. Kaufman,* 35 T.C. 663, 666 (1961), affd. 300 F. 2d 128 (C.A. 6, 1962); cf. *Chism's Estate* v. *Commissioner,* 322 F. 2d 956 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court. That "liberalizing intent" was directed toward employees. Moreover, we cannot ignore the fact that section 105(a) is an *inclusionary* provision, with subsection (b) a specific exception thereto. Cf. *Commissioner* v. *Jacobson,* 336 U.S. 28 (1949).

On the record before us, we hold that petitioners have failed to show that the purpose of the assumed "plan" was to benefit employees. On the contrary, we think that the genesis of such "plan" was to benefit stockholders and their relatives and only incidentally and sporadically nonstockholder employees. Cf. *Graybar Electric Co., supra.* Such being the case, the payments made by the corporation in respect of the medical expenses of the individual petitioners and their dependents are includable in their gross income as distributions of earnings and profits of the corporation [6]—i.e., dividends—and such payments, as well as those in respect of Joseph W. Larkin, are not deductible by the corporation.[7]

*Decisions will be entered under Rule 50.*

---

[5] We note that the Internal Revenue Code of 1954 as it passed the House of Representatives would have imposed nondiscrimination requirements on medical benefit plans. See H.R. 8300, 83d Cong., 2d Sess., sec. 105; H. Rept. No. 1337, 83d Cong., 2d Sess. Those restrictions were eliminated in the Senate (see S. Rept. No. 1622, 83d Cong., 2d Sess.) and the Senate version was adopted. See H. Rept. No. 2543, 83d Cong., 2d Sess.; Comment, "Taxation of Employee Accident and Health Plans Before and Under the 1954 Code," 64 Yale L.J. 222 (1954). Respondent's regulations also provide that "a plan may cover one or more employees." Sec. 1.105–5, Income Tax Regs.; Rev. Rul. 58–90, 1958–1 C.B. 88; sec. 1.106–1, Income Tax Regs. Petitioner's reliance on Peterson & Co., docket No. 865–65, and related dockets, is wholly without merit. Aside from the fact that respondent's concessions in other cases, particularly where they are not litigated, are of no probative or persuasive value, an examination of the record indicates that the stockholder employees may well have constituted a natural category of employees sufficient to indicate that the genesis of the plan was the employee rather than the stockholder relationship. The same appears to be true in Wellington F. Roemer, docket No. 3457–65, and related dockets, also conceded by respondent, where the plan covered both stockholder and nonstockholder employees.

[6] We do not have the income tax liability of Joseph W. Larkin before us. Also, it appears that the individual petitioners have already received the full benefit of the dividend credit under sec. 34 for the taxable years in question.

[7] Respondent does not contest the deductibility of the payments for the benefit of Pluznick. Petitioner corporation has not claimed that the medical expenses paid for the benefit of the three Larkins constituted additional compensation deductible under sec. 162(a).