OPINION Raum, Judge: Samuel Levine was the majority stockholder and principal executive officer of Selco Supplies, Inc., a small family corporation. He underwent a cancer operation in September 1957, and on October 1, 1957, he and other officers of Selco held a meeting at his home at which it was voted that he “be allowed to draw sick pay for the duration of his illness,” and it was also voted that “anyone who might become ill be allowed to draw sick pay for the duration of their illness providing they are regular employees.” A limit of $100 per week was placed upon such “sick pay.” The officers who voted the foregoing benefits were all members of Levine’s immediate family, and no copy of any resolution, minutes, or any other writing setting forth these benefits was ever shown to any employee. Although it is quite true that employees were told that they would receive pay while absent on account of illness, there is no convincing evidence that they were informed of the existence of any “plan,” or that such compensation would be paid indefinitely during a long period of illness extending for many months or years. And the evidence establishes that such sick pay was in fact paid to other employees for only relatively short periods. We hold that the amounts paid to Levine during the tax years 1960-62 did not in fact constitute sick pay excludable from gross income under section 105(d), I.R.C. 1954. In our opinion, the amounts were not given to him because he was an employee but were paid to him because of his dominant position as the principal stockholder of Selco; they were taxable as dividends. We reacli this conclusion notwithstanding the liberal interpretation given to the statute by section 1.105-5 (a) of the regulations, where it is indicated that the plan need not be in writing and that the plan may provide different benefits for different employees. But the fundamental premise of the regulations is not only that there must be a plan, see John C. Lang, 41 T.C. 352, 355-357; Estate of Leo P. Kaufman, 35 T.C. 663, 666, affirmed 300 F. 2d 128 (C.A. 6), but also that there must be some rational basis other than ownership of the business to justify discrimination among employees; i.e., that the so-called sick pay in question must in fact represent bona fide sick pay for employees rather than distributions to stockholders. Alan B. Larkin, 48 T.C. 629, affirmed 394 F. 2d 494 (C.A. 1). The mere circumstance that the payments may be labeled sick pay for employees is not conclusive, and the Court is justified in examining the situation carefully to determine whether the label in fact speaks the truth. See Alan B. Larkin, supra, 48 T.C. at 633. We cannot conclude that the payments in controversy, at least during the tax years 1960-62, represent bona fide sick pay to Levine as an employee. Selco was a small company. Its reported net income was almost negligible. It had only a small number of employees, and it provided benefits for them only on a modest scale. It had no pension plan for employees, and it gave them vacations of 1 week for the first year of employment and 2 weeks a year thereafter. It in fact gave them bona fide sick pay for relatively short periods of illness. But it is utterly incredible in view of its limited income and other circumstances that it would have undertaken the comparatively staggering financial burden of continuing to pay wages to its employees over an indefinite extended period of years of illness. While it is true that a bona fide plan for sick pay might have provided for a longer period on behalf of the president than would have been adopted for other employees, we do not believe that such period would have covered so extended a span of years as is before us now if he were not the principal stockholder and in fact the true owner of the business. As we interpret Selco’s “plan,” assuming that it otherwise qualifies as a sick pay “plan,” it would make payments to its employees for the “duration” of their illness only if such “duration” were a reasonable period of time. We reject as wholly unrealistic an interpretation whereby it was undertaking an obligation for any longer period in respect of its employees, and we conclude that Levine was receiving the payments in question in 1960-62, not because he was an employee, but because he was the principal stockholder. Such payments do not represent bona fide sick pay to an employee; rather, they constitute taxable dividends and are not deductible by Selco. In Anew of tlie conclusion readied by us we do not pause to comment upon the discrepancy between the Levines’ position that only $4,800 of the $5,200 received 'by him each year Avas sick pay and tlie position of the corporation that the entire $5,200 represented sick pay; nor is it necessary to consider the Government’s further contention that there was no “plan” 'ait the time Levine first became ill. Decisions will he entered under Bule 50.