Bogene, Incorporated v. Commissioner. Joseph S. Bowman and Gertrude Bowman v. Commissioner.
Bogene, Inc. v. Comm'r
Docket Nos. 2277-67, 2278-67.
United States Tax Court
T.C. Memo 1968-147; 1968 Tax Ct. Memo LEXIS 152; 27 T.C.M. (CCH) 730; T.C.M. (RIA) 68147; July 11, 1968, Filed *152 Lawrence Metzger, for the petitioners. Leo A. Burgoyne, for the respondent. DAWSON
*731 Memorandum Opinion DAWSON, Judge: In these consolidated cases respondent determined the following income tax deficiencies: Petitioners
Docket No.
Year
Deficiency
Bogene Incorporated
2277-67
1962
$806.11
1963
2,665.41
Joseph S. Bowman and Gertrude Bowman
2278-67
1962
337.29
1963
243.09
The issues for decision are: (1) Whether medical reimbursement payments by Bogene Incorporated to Joseph S. Bowman are excludable from Bowman's gross income in the years 1962 and 1963 under the provisions of section 105, Internal Revenue Code of 1954; [1] and (2) whether such payments to its shareholder officers are deductible by Bogene as ordinary and necessary business expenses for those years under section 162(a). Bogene Incorporated conceded the correctness of respondent's adjustment to its pension fund contribution. This is a fully stipulated case. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Joseph S. and Gertrude Bowman (hereinafter called Joseph and Gertrude) are husband and *153 wife whose legal residence was Lebanon, Pennsylvania, at the time they filed their petition in this proceeding. They filed joint Federal income tax returns for the years 1962 and 1963 with the district director of internal revenue at Philadelphia, Pennsylvania. Bogene, Inc. (hereinafter called Bogene), is a corporation organized under the laws of the Commonwealth of Pennsylvania. Its principal place of business at the time it filed its petition herein was Lebanon, Pennsylvania. Bogene is in the business of manufacturing and selling household products generally termed garment bags. Bogene keeps its books on a calendar year basis and on the accrual method of accounting. It filed its Federal corporation income tax returns for the years 1962 and 1963 with the district director of internal revenue at Philadelphia, Pennsylvania. It reported taxable income of $21,238.50 and $24,705.84 for those respective years, and its books reflected earned surplus and undivided profits as of December 31, 1962, and December 31, 1963, of $84,338.89 and $99,397.36, respectively. Bogene was incorporated in 1952 and is the successor to J. S. Bowman, a partnership whose partners were Joseph and Gertrude. At *154 all times material, Joseph Bowman and J. Gene Hochfelder (hereinafter called Hochfelder) were the president and treasurer of Bogene. In the years 1962 and 1963, they were the only compensated officers listed on Bogene's Federal income tax returns. Bogene's board of directors consisted of Joseph, Gertrude, Hochfelder, and Hochfelder's wife. Its issued and outstanding stock was held 50 percent by Hochfelder, 25 percent by Joseph, and 25 percent by Gertrude. During the year 1962 Joseph and Hochfelder were each paid $25,050. During the year 1963 they were each paid $21,800. Gertrude received no compensation. She had been in charge of the office for Bogene when it was first organized; however, such duties were "phased out" before 1960. Gertrude attended meetings of the board of directors and held discussions with the corporate officers and accountants on various corporate matters. In 1956 Bogene instituted a group insurance plan with the Travelers Insurance Company. It was open to all of its employees and certain of their dependents. The plan was in effect throughout the years 1962 and 1963. During those years about 50 employees, including Joseph and Hochfelder, were covered by the plan. *155 Each covered employee received a booklet explaining the protection for medical expenses incurred and the contributions of both Bogene and the employees toward the cost of the insurance. In January 1962, while auditing its 1961 records, Bogene's accountants informed Joseph and Hochfelder that, pursuant to their understanding of the Internal Revenue Code and the regulations promulgated thereunder, Bogene could pay the medical expenses of one or more of its employees and such payments would be deductible expenses to Bogene as well as excludable from the gross income of the reimbursed employees. A special meeting of the stockholders was then called on January 25, 1962, at which all stockholders were present. A resolution was unanimously adopted whereby Bogene would pay all medical expenses of Joseph, Gertrude, and their children. The minutes of that meeting read as follows: *732 Mr. J. Gene Hochfelder, Chairman, called the meeting to order at 2:30 p.m. He informed the stockholders that he had been advised by the Company's auditors that medical expenses of one or more employees and their families could be paid by the Company and would be considered as deductible expenses by the Company. *156 He then made a motion that "Bogene Inc. shall pay all medical expenses incurred by Mr. J. S. Bowman for himself, his wife and his children for the year 1962 and henceforth". The motion was seconded by Mrs. Gertrude Bowman and passed unanimously. There being no further business pending the meeting was adjourned at 2:45 p.m. At Bogene's annual stockholders meeting for 1963, held on January 29, 1963, a resolution was unanimously adopted whereby "Bogene, Inc. shall pay for all medical expenses incurred by Mr. J. G. Hochfelder for 1963 and henceforth." All of Bogene's stockholders were present at that meeting. Other than the group insurance plan with Travelers Insurance Company and the above resolutions, there was no written document of any corporate program of medical benefits. In 1962 Bogene reimbursed Joseph for the following medical expenses paid by him and not covered by or reimbursed under the group plan: Nurses
$295.00
Doctors
663.00
Dentist
1,000.00
Drugs
320.08
Transportation
130.00
Health & accident insurance 420.36
Total
$2,828.44
All of these medical expenses, with the exception of those for health and accident insurance, were for the benefit of Gertrude. In 1963 Bogene reimbursed Joseph *157 and Hochfelder for the following medical expenses paid by them and not covered or reimbursed under the group plan: Joseph S. Bowman:
Dentist
$1,100.00
Doctors
506.75
Travel
120.00
Hospitalization
314.97
Drugs 201.64
Total
$2,243,36
J. Gene Hochfelder:
Dentist
$160.00
Doctors
2,153.00
Hospitalization
70.60
Drugs 421.43
Total
$2,805.03 The medical expenses listed for Joseph were for the benefit of Gertrude and the medical expenses listed for Hochfelder were for the benefit of his wife and children. Respondent disallowed all of the deductions of the medical expenses to Bogene for 1962 and 1963 and included in the gross income of Joseph and Gertrude the amounts of the medical expenses for which they were reimbursed by Bogene. However, respondent did allow Joseph and Gertrude deductions for medical expenses under section 213. As to the first issue, Joseph claims that he correctly excluded from his gross income the amounts he received from Bogene as reimbursement for medical expenses that he and Gertrude incurred in the years 1962 and 1963. Respondent, on the other hand, contends that the reimbursements were not made under a "plan for employees" and therefore are includable in Joseph's gross income under section 105(a). *158 Section 105(a) provides that, as a general rule, "amounts received by an employee through accident or health insurance for personal * * * sickness shall be included in gross income to the extent such amounts" are attributable to contributions of or paid by the employer. Section 105(b) creates an exception for certain amounts paid "to reimburse the taxpayer for expenses incurred by him for the medical care * * * of the taxpayer, his spouse, and his dependents." Section 105(e) provides that for purposes of section 105, "amounts received under an accident or health plan for employees * * * shall be treated as amounts received through accident or health insurance." Section 1.105-5(a), Income Tax Regs., provides the following definitive guidelines as to what constitutes an accident and health plan: In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness. A plan may cover one or more employees, and there may be different plans for different employees or classes of employees. An accident or health plan may be either insured or noninsured, and it is not necessary that the plan be in writing or that the *159 employee's rights to benefits under the plan be enforceable. However, if the employee's rights are not enforceable, an amount will be deemed to be received under a plan only if, on the date the employee became sick or injured, the employee was covered by a plan (or a program, *733 policy, or custom having the effect of a plan) providing for the payment of amounts to the employee in the event of personal injuries or sickness, and notice or knowledge of such plan was reasonably available to the employee. It is immaterial who makes payment of the benefits provided by the plan. It is clear that a "plan," as defined in the regulations, existed at the time Joseph received the reimbursements from Bogene. Although the plan was not in writing, the resolution adopted by the board of directors was reported in the corporate minutes. The plan was known to Joseph before he received any payments. It was a health plan as opposed to compensation. These facts make the instant case sharply distinguishable from Estate of Leo P. Kaufman, 35 T.C. 663 (1961), affd. 300 F. 2d 128 (C.A. 6, 1962), and John C. Lang, 41 T.C. 352 (1963). In the Kaufman case we found that there was no "plan." The payments there *160 constituted compensation to an officer for his counsel and advice and were merely in the nature of ad hoc benefits. Similarly, in the Lang case the decision as to whether to continue an employee's salary during illness was totally within the discretion of management. Such circumstances are not present here. Hence, we hold that a "plan," as that term is used in section 105, did exist. We are thus confronted with the narrow question as to whether the plan was "for employees." This, of course, depends upon whether the plan is "truthfully described by the labels which the parties have attached to it." See Graybar Electric Co., 29 T.C. 818, 832 (1958), affirmed per curiam 267 F. 2d 403 (C.A. 2, 1959). The plan covering Joseph and Hochfelder was intended to provide benefits to them as employees, president and treasurer of Bogene. [2] *161 Both were full-time employees of the corporation receiving equal compensation from it. The only other persons receiving benefits under the plan were their dependents.[3] The plan was one which covered only persons who were employees. Respondent argues that the intent of the plan was to benefit only Bogene's stockholders, i.e., Joseph and Gertrude Bowman and J. G. Hochfelder, and that our opinion in Alan B. Larkin, 48 T.C. 629 (1967), affd. 394 F. 2d 494 (C.A. 1, 1968), is controlling. [4] We disagree because we find the Larkin case distinguishable. In Larkin, an important consideration was the fact that the only corporate employees covered by the accident and health plan were those who "the officers at their discretion" thought should be covered. This was the very point stressed by the Court of Appeals when it said: The Treasury regulation (1.105-5(a)) enacted pursuant to section 105 is a liberal one. Under it the plan need not be in writing and the employees' right to benefits under it need not be enforceable as long as they had prior knowledge of the fact that they were covered. Also, a plan may cover one or more employees and there may be different plans for different employees or *162 classes of employees. But there must be a Plan. [n3] Here the amounts to be paid and the circumstances under which they were to be paid were decided on an ad hoc basis. Alan Larkin, the only witness, acknowledged that the employees were not informed directly even of the existence of the plan; further, that even if an employee were covered, he would not necessarily be paid for unusually heavy medical bills. No limits were determined as to time or amount. [Footnote omitted.] [Italics added.] The plan here involved does not contain any such provision or condition. It is also significant that, unlike Larkin and Graybar Electric Company, there is no evidence herein that certain employees were given benefits under the plan, because of their status as stockholders, to the exclusion of otherwise identical employees who were not stockholders. Unlike the stockholders in Larkin, Joseph Bowman and J. G. Hochfelder were unrelated. Unlike Larkin, the underlying purpose of this plan was to provide extra medical benefits to the two key management employees, no matter which one benefited the most. Because sickness strikes unexpectedly and fortuitously, neither the statute nor the regulations creates *163 a quantitative measure of medical benefits allowable on the basis of services performed. *734 Unlike Larkin, this plan simply provided medical benefits to the principal officer-employees of the corporation in addition to those provided under another plan which benefited all employees. Unlike Larkin, this plan did fix the limits of the benefits; it provided that all medical expenses incurred by Joseph and Hochfelder would be reimbursed by Bogene. Although the Bowmans and Hochfelder each held 50 percent of Bogene's stock, there was no relationship between stockholding and the amount of medical benefits to be paid. If Joseph's medical expense was $10,000 in one year and Hochfelder's was only $10 that year, the plan provided for the payment of all benefits to each. In other words, there was no relationship between the amount fixed and the respective stock interest of each of the covered officer-employees. Thus, we believe the genesis of this plan was the employee, rather than the stockholder, relationship. Indeed, it would be unfortunate if the payments made by Bogene failed to qualify simply because the employees, Joseph and Hochfelder, also happened to be stockholders, and Larkin contains *164 no such implication. See 48 T.C. at p. 635, footnote 5. Respondent's main thrust is that the plan benefits only the officer-employees of the corporation to the exclusion of other employees and is therefore discriminatory per se in its operation. Our examination of the relevant legislative history, the plain language of the regulations, and other sections of the Internal Revenue Code which deal with discrimination in employee plans, persuades us otherwise. As originally passed by the House, section 105 contained nondiscrimination provisions which would have imposed upon medical reimbursement plans the nondiscrimination requirements applicable to qualified pension and profit-sharing plans. See H. Rept. No. 1337, 83d Cong., 2d Sess., p. 15. The Senate Finance Committee, however, deleted the nondiscrimination provisions inserted by the House, and the Senate version was adopted. See Conf. Rept. No. 2543, 83d Cong., 2d Sess., *165 pp. 24-25. Moreover, the Senate Finance Committee Report on section 106, which provides an exclusion from the employee's gross income for employer contributions to a medical plan, contemplates discriminatory treatment. See S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 15-16, and section 1.106-1, Income Tax Regs. It is plain that Congress intended to treat benefits under a medical reimbursement plan in the same manner as those under a medical contribution plan. We cannot accept respondent's characterization of the medical reimbursement payments here involved as equivalent to the distribution of dividends out of corporate earnings and profits. In these circumstances, as distinguished from the particular factual pattern of the Larkin case, neither section 105 nor the regulations thereunder contain any limitation which precludes an "employee" who is also a shareholder and a highly compensated officer of the corporation from enjoying the tax benefits granted by that section. Cf. Edward P. Clay, 46 T.C. 505 (1966). To so hold would deny the benefits of section 105 to many officer-employees of closely-held corporations - a result that would be incompatible with Congressional intent. Accordingly, *166 we conclude on this record that the medical reimbursement payments were made by Bogene under a "plan for employees." Therefore, the amounts received by Joseph Bowman in 1962 and 1963 are excludable from gross income under section 105(b). Finally, we must decide whether Bogene is entitled to deductions for the medical expense reimbursements paid to Joseph and Hochfelder. Bogene claims that the payments were ordinary and necessary business expenses under section 162(a). [5] Respondent counters with the contention that they were distributions of corporate earnings and profits. A necessary corollary of section 105 is that if the payments are excludable from the gross income of the employee because they are made under a "plan for employees," the corporation is entitled to a deduction for such payments under section 162(a). Section 1.162-10(a), Income Tax Regs., in giving examples of business expenses, lists expenditures for "sickness, accident, hospitalization, medical expense, *167 * * * or similar benefit plan" as deductible business expenses if they are "ordinary and necessary." We find on this record that they were ordinary and necessary. Consequently, Bogene is entitled to the deductions under section 162(a). Since section *735 105(b) includes amounts expended for medical care of the employee's spouse and dependents (as defined in section 152), payments to reimburse the employee for expenditures on their behalf likewise fall within the provisions of section 162(a). To reflect the concession made by Bogene, Decision will be entered under Rule 50 in docket No. 2277-67. Decision will be entered for petitioners in docket No. 2278-67. Footnotes
1. All subsequent references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. The parties attach no significance to the fact that the plan covered only Joseph in 1962. Since it is a fact which cuts two ways, we have not considered it as having any bearing on our conclusions herein. 3. We construe the corporate resolution with respect to Hochfelder as including all medical expenses "incurred" by him for the benefit of his wife and children.↩
4. In his reply brief respondent cites Samuel Levine 50 T.C. No.↩ 40 (June 4, 1968), but he does not rely on the case as controlling nor does he urge that it dictates the result for which he contends here. We believe that Levine is clearly distinguishable on its facts.
5. SEC. 162. TRADE OR BUSINESS EXPENSE. (a)In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *↩