Harry Hoffman and Lillian Hoffman v. Commissioner.
Hoffman v. Commissioner
Docket Nos. 3907-64, 1847-66.
United States Tax Court
T.C. Memo 1967-158; 1967 Tax Ct. Memo LEXIS 101; 26 T.C.M. (CCH) 737; T.C.M. (RIA) 67158; August 2, 1967
*101 Held: That net withdrawals of corporate funds by controlling stockholders of two corporations were intended as and were in fact loans and therefore did not constitute taxable distributions of the corporations' funds to them. Hover T. Lentz and Bruce L. Evans, 1900 First National Bank Bldg., Denver, Colo., for the petitioners. Arthur B. Bleecher, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined deficiencies in petitioners' joint income taxes as follows: Docket
No.
Year
Deficiency
3907-64
1958
$13,288.68
1959
13,052.83
1960
10,889.73
1961
23,976.40
1847-66
1962
4,241.22
1963
5,977.01
1964
115.05
These cases were consolidated upon joint motion and will be decided together. The sole question remaining for our decision *102 after certain agreements by the parties is whether net withdrawals by petitioners from two wholly owned or controlled corporations constituted loans or taxable dividends. Findings of Fact Some of the facts have been stipulated and are found accordingly and adopted as our findings. Petitioners are husband and wife and their legal residence at the time the petitions were filed herein was Denver, Colorado. Their joint returns for the years involved were filed with the district director of internal revenue at Denver, Colorado. Harry Hoffman, Inc., hereinafter referred to as Hoffman, Inc., is a corporation organized under the laws of Colorado and during the years in question was engaged in the retail sale of packaged liquor in Denver. During the years in question Hoffman, Inc., had 1,234 shares of stock outstanding. Petitioner Harry Hoffman, hereinafter sometimes referred to as Harry, owned 1,133 of the shares and petitioner Lillian Hoffman, hereinafter sometimes referred to as Lillian, owned the remaining 101 shares. Harry was president and a director of Hoffman, Inc., and Lillian was secretary, treasurer and a director. For its fiscal years ending September 30, 1954, through *103 September 30, 1965, inclusive, Hoffman, Inc., reported accumulated earnings or earned surplus on its income tax returns as follows: Year
Earned Surplus
9/30/54
$ 28,308.37
9/30/55
68,534.07
9/30/56
107,624.98
9/30/57
152,629.43
9/30/58
191,451.00
9/30/59
231,621.00
9/30/60
246,621.00
9/30/61
292,438.00
9/30/62
341,176.00
9/30/63
378,439.00
9/30/64
439,920.00
9/30/65
505,617.00
Howard Investment Company, hereinafter referred to as Howard Investment, was a corporation organized under the laws of Colorado to acquire and hold real estate for investment purposes in Denver. Its principal property was the building used by Hoffman, Inc., as lessee. Howard Investment was dissolved and liquidated on or about August 31, 1964. During the years in question the 591 shares of issued and outstanding stock of Howard Investment were owned as follows: Harry 223 1/2, Lillian 223 1/2 and their three children 144. Harry was president and a director of Howard Investment and Lillian was secretary, treasurer and a director. During its fiscal years ending April 30, 1954, through April 30, 1964, and the fiscal period May 1, 1964, to August 31, 1964, inclusive, Howard *104 Investment reported accumulated earnings or earned surplus on its income tax returns as follows: Year
Earned Surplus
4/30/54
$ 5,772.30
4/30/55
29,243.68
4/30/56
39,169.29
4/30/57
48,675.26
4/30/58
57,179.13
4/30/59
74,326.00
4/30/60
79,007.00
4/30/61
82,052.00
4/30/62
87,349.00
4/30/63
105,757.00
4/30/64
143,615.00
8/31/64
161,645.00
From time to time prior to, during and after the taxable years in issue, Harry and Lillian withdrew money from and made payments of money and property to Hoffman, Inc., and Howard Investment. The following is a summary of the withdrawals from and repayments to Hoffman, Inc.: Repayments
Net
Balance
Year
Withdrawals
and Credits
Withdrawals
Owed
1953
$16,000.00
1954
$36,292.27
$28,000.00
$ 8,292.27
25,292.27
1955
433.43
25,162.56
(24,729.13)
( 436.86)
1956
19,707.15
19,707.15
19,270.29
1957
46,000.00
17,000.00
29,000.00
48,270.29
1958
11,594.59
54,576.32
(42,981.73)
5,288.56
1959
18,976.50
18,976.50
24,265.06
1960
13,605.71
13,605.71
37,870.77
1961
21,617.00
21,617.00
59,487.77
1962
17,047.05
11,948.00
5,099.05
64,586.82
1963
22,500.00
11,600.00
10,900.00
75,486.82
1964
13,000.00
63,982.28
(50,982.28)
24,504.54
1965
12,904.54
(12,904.54)
11,600.00
*105 The following is a summary of the withdrawals from and repayments to Howard Investment: Repayments
Net
Balance
Year
Withdrawals
and Credits
Withdrawals
Owed
1953
($39,559.91)
1954
$40,159.91
$40,159.91
600.00
1955
6,255.00
6,255.00
6,855.00
1956
1,000.00
1,000.00
7,855.00
1957
$ 5,000.00
( 5,000.00)
2,855.00
1958
64,970.29
45,000.00
19,970.29
22,825.29
1959
5,750.00
5,750.00
28,575.29
1960
8,000.00
8,000.00
36,575.29
1961
23,500.00
630.76
22,869.24
59,444.53
1962
3,633.38
2,746.25
887.13
60,331.66
1963
800.00
808.83
( 8.83)
60,322.83
1964
854.42
( 854.42)
*
The books and records of Hoffman, Inc., and Howard Investment set forth in accounts designated as "Loans Receivable-Officers" and "Notes Receivable-Officers" the amounts withdrawn from and repaid to each corporation by the petitioners and the general nature of such withdrawals and repayments. The procedures followed for recording the withdrawals and repayments on *106 the corporate books of Hoffman, Inc., and Howard Investment were the same. Generally, the withdrawals would be in the form of checks. The information reflecting the withdrawal would be recorded on the check register and on the check stub indicating that it was a loan. An accounting firm would then record the withdrawal in the journals and post it to the "Loans Receivable-Officers" account. From time to time Harry and Lillian executed notes and the amount would be removed from the "Loans Receivable-Officers" account and transferred to a "Notes Receivable-Officers" account. When repayments were made in cash, the cash was deposited in the proper bank account of the respective corporation and the information was recorded in the corporation daybook. The accountants would then take that information and enter it into the cash receipts journal and post it as a credit to the "Loans Receivable-Officers" account or the "Notes Receivable-Officers" account. In some cases payments were made by a transfer of property in which case the entry would be handled through the journals, the general journal reflecting the transfer and the note or loan receivable account would be reduced. During the years *107 at issue Harry and Lillian executed 17 unsecured promissory notes payable to either Hoffman, Inc., or Howard Investment, all of which had a fixed interest rate of 5 percent per annum and a fixed maturity date, as follows: Payee
Date
Issued
Maker
Due Date
Hoffman, Inc.
Howard Investment
5/ 1/59
Harry
2 yrs.
$18,625.29 [1]
5/ 1/59
Lillian
2 yrs.
7,450.00 [1]
9/30/60
Harry
1 yr.
$25,000.00 [2]
4/30/61
Harry
2 yrs.
23,494.53
4/30/61
Lillian
2 yrs.
12,450.00
6/21/61
Lillian
2 yrs.
15,000.00
10/ 1/61
Harry
2 yrs.
6,500.00 [3]
10/ 1/61
Lillian
2 yrs.
15,000.00 [3]
4/30/62
Harry
2 yrs.
5,253.75
4/30/62
Lillian
2 yrs.
1,500.00
9/30/62
Harry
2 yrs.
9,000.00
9/30/62
Harry
2 yrs.
25,000.00
9/30/62
Lillian
2 yrs.
2,500.00
9/30/63
Harry
2 yrs.
6,500.00
9/30/63
Lillian
2 yrs.
15,000.00
9/30/63
Harry
2 yrs.
8,347.05
9/30/63
Lillian
2 yrs.
6,239.77
*108 Interest on all notes due from Harry and Lillian to Hoffman, Inc., was paid in full by them. Interest due on notes to Howard Investment was paid through the fiscal year ending April 30, 1963. The amount of interest which accrued after April 30, 1963, on the notes to Howard Investment was distributed to the children of Harry and Lillian as a receivable in the liquidation of Howard Investment on August 31, 1964, and the accrued interest was subsequently paid in full to the children. All of the notes executed were either specifically authorized or recognized as creating indebtedness in the corporate minutes of the two corporations. Harry and Lillian made the following payments to the respective corporations claiming such payments as interest deductions on their income tax returns and the corporations reported such amounts as interest income on their respective income tax returns: Year
To Hoffman,
To Howard
Paid
Inc.
Investment
1960
$2,173.00
1961
$1,250.00
435.00
1962
2,440.38
1963
5,225.00
1,447.50
1964
2,944.28
Total
$9,419.28
$6,495.88
Upon the liquidation of Howard Investment in 1964, the amount of the loans receivable account owed *109 by Harry and Lillian was transferred to their three children as part of the liquidating distribution and notes were issued in lieu of the balances due. Principal and interest payments were subsequently made on these notes. Audited financial statements of Hoffman, Inc., set forth the net balance withdrawn by Harry and Lillian and these statements were submitted on an annual basis to a bank for purposes of obtaining credit. A special financial statement of Howard Investment dated April 30, 1961, which set forth the current balance due from Harry and Lillian as an asset under the category, "Notes or Accounts Due from Officers, Stockholders or Employees," was also submitted to the bank for purposes of obtaining credit. The total compensation paid to Harry and Lillian by Hoffman, Inc., for services rendered during the taxable years in question was as follows: Year
Harry
Lillian
1958
$35,894
$2,500
1959
36,402
2,500
1960
29,910
2,500
1961
38,508
2,500
1962
42,496
2,500
1963
41,155
2,500
1964
51,786
2,500 In addition Harry received a salary from Howard Investment of $1,200 in 1961 and $3,000 per year in 1962, 1963 and 1964. From 1956 through *110 July of 1964, Hoffman, Inc., made substantial advancements to Howard Investment. Such advances were treated in the same manner on the corporate books and records as the withdrawals by Harry and Lillian. The intercompany balance reached a high of $230,064.33 in 1960 but this amount was reduced to $155,480.99 by April 30, 1960. The balance due was $200,596.82 in July of 1961 but was reduced to $125,596.82 in January of 1962. The balance owed was further reduced to $43,605.42 on or about August 31, 1964, shortly before the liquidation of Howard Investment. Harry and Lillian used the withdrawn funds for various purposes including investments, medical and living expenses for Harry's father who was seriously injured in an automobile accident, educational expenses for their children, expenses relating to their daughter's automobile accident and general living expenses. Some of the withdrawn funds were also used to cover an investment loss of approximately $54,000 before applicable tax deductions which arose out of fraudulent misuse of funds by unrelated persons. No dividends have ever been declared or paid as such by Hoffman, Inc., or Howard Investment. At the time of the withdrawals *111 each corporation had earnings and profits exceeding the aggregate net withdrawals from each corporation. No collateral security was ever given to secure the withdrawals. Respondent sent to Harry and Lillian on February 27, 1964, a report of examination dated January 17, 1964, reflecting adjustments to petitioners' 1958, 1959, 1960 and 1961 income tax returns concerning, among other things, the withdrawals from Hoffman, Inc. and Howard Investment. Respondent determined that the net withdrawals (the amount of the withdrawals in each year in issue less repayments and claimed interest payments made in the same year) constituted disbursements of earnings and profits and are taxable to petitioners as dividends. Ultimate Finding of Fact The net amounts withdrawn by petitioners from Hoffman, Inc., and Howard Investment during the years in issue were intended as and were in fact loans. Opinion The instant controversy involves the often litigated issue of whether a stockholder's withdrawals of funds from his corporation should be treated for income tax purposes as the equivalent of dividend distributions under section 316 of the Internal Revenue Code of 1954 *112 and therefore taxable or as nontaxable loans from the corporation. The issue is purely factual and its determination is dependent upon all the circumstances and facts existing at the time of the withdrawals. Wiese v. Commissioner, 93 F. 2d 921 (C.A. 8, 1938), affirming, 35 B.T.A. 701 (1937), certiorari denied 304 U.S. 562 (1938), rehearing denied 304 U.S. 589 (1938). The goal of the factual inquiry is the ascertainment of the subjective intent of the shareholder as to whether bona fide loans occurred at the time of the withdrawals based upon an analysis of certain objective factors. Chism's Estate v. Commissioner, 322 F. 2d 956 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court; William C. Baird, 25 T.C. 387 (1955); Carl L. White, 17 T.C. 1562 (1952). We recognize the inherent difficulties in applying the concept of a debtor-creditor relationship to a stockholder and his wholly owned or controlled corporation as present in this case, but it is well accepted that withdrawals can constitute loans under such circumstances. Victor Shaken, 21 T.C. 785 (1954). However, a *113 controlling shareholder has the ability to manipulate the affairs of his corporation so as to obtain the permanent use of corporate funds without the declaration of a taxable dividend by using the guise of loans from the corporation. The possible presence of a tax evasion motive in such a case invites our careful scrutiny of all factors and details as well as the overall situation. See W. T. Wilson, 10 T.C. 251 (1948), affd. 170 F. 2d 423 (C.A. 9, 1948), certiorari denied 336 U.S. 909 (1949); William C. Baird, supra. In analyzing the various objective manifestations of petitioners' intent, we view the many withdrawals as a course of conduct which must be characterized as either borrowing corporate funds or permanently distributing them. Petitioners discuss many affirmative factors which tend to support their position that the withdrawals should be considered bona fide loans. One of the factors is the treatment of the withdrawals on all the corporate books and records as loans. A notation was made on both the check register and the check stub that each withdrawal was a loan. The initial indication of a loan was then carried to *114 the formal books of accounts for the corporations. It is also significant that financial statements for the corporations and petitioners personally, which were used for purposes of obtaining credit, reflected the withdrawals as loans. Another influential factor in support of petitioners' position is the issuance of interest-bearing notes with a specified maturity date and the payment of interest thereon. V. H. Monette & Co., 45 T.C. 15 (1965); Estate of Isadore Benjamin, 28 T.C. 101 (1957). Although the first notes were not issued until 1959 which was a number of years after the practice of withdrawing corporate funds had begun, notes were issued in substantial amounts and interest was actually paid before respondent began his investigation. The payment of interest created income which was taxed to the corporations. Respondent emphasizes the fact that the entire balance due under the open accounts was not converted into notes until 1963 and that notes were often not paid when due but renewed and sometimes were renewed late. There was obviously a failure to follow certain business formalities in the handling of the notes but this is not unusual in dealings *115 between a stockholder and his closely held corporation. It is true that interest was not paid on the balance due under the open accounts and that the net amount withdrawn from Hoffman, Inc., and Howard Investment tended to increase over the years until respondent questioned the practice. However, the issuance of interest-bearing notes is favorable evidence indicative of petitioners' intent that the withdrawals constituted loans. Even without the issuance of notes, withdrawals may well be loans, not taxable distributions. Wiese v. Commissioner, supra.Thus respondent's tactic of relying on certain irregularities and inconsistencies in the issuance of notes to bolster his position fails to diminish the significance of the issuance of the notes and the actual payment of substantial interes. With regard to the gradual increase in the net amount withdrawn, we note that the annual net withdrawals varied greatly in amount and in some of the years preceding respondent's investigation repayments exceeded the withdrawals. The net amount withdrawn in any one year was not so much that it patently indicates a permanent appropriation of corporate funds. The annual net withdrawals *116 were substantially less than Harry's annual level of compensation for services rendered to the corporations. This compensation was subject to taxation when received by Harry. Respondent contends that most of the repayments were paper transactions without reality. He attributes this to the instances when there were apparently simultaneous but unequal withdrawals from one corporation and repayments to the other and the crediting of accrued salaries and bonuses to the withdrawal accounts. It is certainly believable that petitioners borrowed money from their controlled corporations for current expenses and investments in anticipation of repaying from future income from the corporations. The fact that the salaries and bonuses were not actually received but merely offset against the open accounts in bookkeeping entries does not detract from the importance of this form of repayment. This compensation constituted income for tax purposes and income taxes were paid thereon. It cannot be said that repayments in this form are less valid in an economic reality sense than any other form of repayment. We agree with respondent's observation that the multiplicity of withdrawal transactions from *117 and between the corporations tends to indicate a manipulation of the corporate affairs for the benefit of the stockholders. We do not believe, however, that the presence of apparent manipulations precludes the existence of bona fide loans. The corporations were closely held and it should be realized that only a legal concept distinguishes such entities from their stockholders. Withdrawals from a closely held corporation, carefully scrutinized, should not be considered the equivalent of dividends if the preponderance of the evidence establishes that the funds were intended to be repaid. Thus the form of the withdrawals or the intended use are not determinative and the corporation may be used as a private bank for the stockholder's benefit under the present statutory scheme without the withdrawals being invariably considered taxable dividends. Respondent emphasizes certain negative factors such as the failure to give collateral security and the absence of dividends declared by Hoffman, Inc., and Howard Investment in light of their substantial retained earnings. We have carefully considered these evidentiary factors along with all of respondent's arguments but after weighing all the *118 factors and affording them their proper weight as bearing on the ultimate issue of intent, we have found that the withdrawals were intended to be and were in fact loans. Permanent use of the withdrawn funds was not the object. Petitioners' testimony and their accountant's testimony [were] convincing and together with all of the other evidence of record and the numerous objective factors in their favor previously discussed have convinced us that the withdrawals were intended as loans. Petitioners have overcome the presumption of correctness of respondent's deficiency determination with respect to the withdrawals. We hold, therefore, that the net withdrawals did not constitute taxable distributions of corporate funds. A Rule 50 computation is necessary because of certain concessions by both parties. Decisions will be entered under Rule 50. Footnotes
*. Howard Investment was liquidated as of August 31, 1964, and the remaining balance was distributed to petitioners' children, the minority stockholders.↩
1. Canceled upon receipt of renewal notes of April 30, 1961. ↩
2. Canceled upon receipt of renewal note in same face amount of September 30, 1962. ↩
3. Canceled upon receipt of renewal note in the same face amount of September 30, 1963.↩